IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| ALLIANCE FOR THE WILD ROCKIES, and NATIVE ECOSYSTEMS COUNCIL, nonprofit corporations, | ) ) ) ) | CV 09-107-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| LESLIE WELDON, in her official capacity as Regional Forester, and the UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council ("Plaintiffs") have filed this action challenging the Forest Service's approval of the Rat Creek Salvage Project on the Beaverhead-Deerlodge National Forest.

Plaintiffs challenge several aspects of the agency's decision; relevant for purposes of this Order is the issuance by the Chief of the Forest Service of an "emergency situation determination." An emergency situation determination allows an agency to implement a project immediately after publication of the approving decision, without awaiting completion of the agency's administrative appeal process. 36 C.F.R. § 215.10(c)(1). Here the Chief issued an emergency situation determination due to concerns that a delay in implementation[1] would allow the timber to degrade to below commercial quality, resulting in economic loss to the government.

Plaintiffs sought a preliminary injunction, which this Court denied in light of the United States Supreme Court's holding in <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7 (2008). <u>See</u> Doc. No. 17. The Ninth Circuit reversed in an order dated June 24, 2010, directing this Court to enter an injunction halting all logging activities on the Project, with a full opinion to follow. Doc. Nos. 34 and 35. The injunction was later modified to allow the logging contractor to haul out timber that had already been harvested and decked, to obliterate existing temporary roads, to complete erosion control and seeding, and to pile and burn

---

[1] The administrative appeal process would have taken between 46 days and 90 days to reach a disposition, at which point the agency would have had to wait an additional 15 business days before implementation. 36 C.F.R. §§ 215.9(b), 215.15(a), (e)(2).

slash. Doc. Nos. 37 and 38. Prior to the injunction, the logging contractor harvested between 74 percent and 83 percent of the original volume of the sale. Doc. No. 66 at ¶.[2]

The court of appeals issued its full opinion on July 28, 2010. 613 F.3d 960. The opinion was amended on September 22, 2010. 622 F.3d 1045. On January 25, 2011, the panel amended the opinion a second time, and issued an order the same day denying the Defendants' petitions for rehearing and rehearing en banc. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011). The court of appeals clarified that the Ninth Circuit's "serious questions" approach to preliminary injunctions survives Winter when applied as part of the four-part Winter test. Id. at 1132. Thus, once a plaintiff has shown a likelihood of irreparable injury and that the injunction is in the public interest, an injunction is warranted if the plaintiff can further show that there are "'serious questions going to the merits' and the balance of hardships tips sharply towards the plaintiff." Id. at 1135.

Applying that standard to this case, the panel concluded that an injunction is

---

[2]Of the original approved total of 1,643 acres, 1,214 had been harvested as of the issuance of the injunction on June 25, 2010. Doc. No. 67 at ¶ 8. Of the remaining 429 acres, only 133 acres remain economically viable in the judgment of the logging contractor. Doc. No. 78-1 at ¶ 9. Thus, the contractor has already conducted 90 percent of the total harvest that the Project is capable of yielding at this point.

warranted with regard to the Plaintiffs' claim that the Service violated the Appeals Reform Act when it issued the emergency situation determination.[3] The panel held there is a likelihood of irreparable harm to the Plaintiffs because "[t]he Project will prevent the use and enjoyment by [Plaintiffs'] members of 1,652 acres of the forest." 632 F.3d at 1135. An injunction would be in the public interest, the panel concluded, because there is a public interest in preserving nature and avoiding irreparable environmental injury and because of the public interest in adherence to the congressionally mandated process for making decisions like the one at issue here. Id. at 1138. The appellate court held that those interests outweigh the beneficial effects of the Project on the local economy, effects which the opinion notes would "begin and end with the work on the Project which is now expected to be completed in 2010." Id. at 1139.

Having found a likelihood of irreparable injury and that an injunction would favor the public interest, the panel then turned to the remaining two Winter factors as expressed in the Ninth Circuit's "serious questions" test. The panel determined that there were, at a minimum, serious questions going to the merits of the Plaintiffs' emergency situation determination claim because of the three factors

---

[3]The panel described the emergency situation determination claim as the Plaintiffs' "strongest argument on the merits," but did not address the strength of any other claim.

relied upon by the Chief in making the determination, two are unpersuasive and one is beyond the proper scope of the Chief's consideration. Id. at 1136-37. The Chief's concern that the federal government could potentially lose $70,000 of revenue failed to justify the emergency situation determination because the concern was speculative and because a loss of $70,000 is not significant to the federal government. Id. The lost opportunity to remove infested trees and plant new trees was also dismissed by the panel as "highly speculative," because that opportunity would be lost only in the unlikely event that there were zero bids on the Project. Id. at 1137. Finally, the court of appeals held that the impact of a project on the local timber industry is not a valid consideration and may not serve as the basis for issuing an emergency situation determination. Id.

Because it identified serious questions going to the merits, the panel went on to consider the final element of the Winter/serious questions test, i.e., whether the balance of hardships tips sharply in the Plaintiffs' favor. In weighing the respective hardships, the court of appeals noted that logging will result in the irreparable loss of recreational opportunities on the land, and that Plaintiffs "[were] harmed by [the] inability to participate in the administrative appeals process, and that harm is perpetuated by the Project's approval." Id. at 1137-38. The court held those harms sharply outweigh the speculative risk that the

government might suffer an insignificant loss if the Project is enjoined. Id.

Upon concluding that all four of the Winter factors are met, including the two making up the "serious questions" test, the Ninth Circuit reversed this Court and directed the issuance of a preliminary injunction.

The Forest Service now seeks to have that injunction dissolved on the ground that the administrative appeal process has been completed. The Plaintiffs filed their appeals on July 23 and 24, 2009. The appeals were pending through the beginning of logging operations on August 21, 2009, and were ultimately resolved in a denial issued by the acting deputy regional forester on October 22, 2009. Logging operations continued until the injunction on June 25, 2010. Since the Plaintiffs have now received the opportunity to be heard on administrative appeal, the Service reasons, they now have no injury and the criteria for an injunction are no longer satisfied.

Courts "retain[] the power to modify the terms of [an] injunction in the event that changed circumstances require it." U.S. v. Oregon, 769 F.2d 1410, 1416, (9th Cir. 1985). The Court retains jurisdiction over an injunction, even in the absence of an express statement to that effect. See United States v. Swift & Co., 286 U.S. 106, 114 (1932). A party seeking a change or dissolution of an injunction may demonstrate that the change is warranted "by showing either a

significant change either in factual conditions or in law." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992).

The Forest Service's motion does not meet the foregoing standard because the agency has shown neither a change in the factual circumstances nor a change in the law.  The Forest Service argues that the completion of the administrative appeal process is a significant change in the facts requiring this Court to conduct a new analysis and re-balance the equities.  This argument fails because the administrative appeal process was complete months before the panel even heard oral argument on the appeal.  The first appellate opinion was issued in September of 2010, nearly a year after the appeals process had concluded.  Moreover, the Forest Service specifically informed the panel of the satisfaction of the administrative appeal requirement in its Petition for Rehearing and Rehearing En Banc filed on October 13, 2010, and asked that the court of appeals' decision be vacated on that basis.  Ninth Circuit Case No. 09-35756, Doc. No. 49-1 at 10, 19.  When the panel issued an amended opinion several months later, it gave no weight or consideration to the fact that the administrative appeal was complete.  Thus, contrary to the Forest Service's argument, the facts have not changed; they are precisely as they were throughout the pendency of this case before the court of appeals, including two amendments of the opinion and denial of the petitions for

rehearing and rehearing en banc.

The Federal Defendants take the view that relevant injury to the Plaintiffs was the denial of an administrative appeal, and that by providing such an appeal, the agency has cured the injury. That approach misinterprets the Ninth Circuit's reasoning. The irreparable injury to which Plaintiffs are exposed is the loss of use and enjoyment of forested federal land due to logging. That risk remains. The panel discussed the lost opportunity to administratively appeal only in the context of balancing the hardships, and there it made clear that the harm to the Plaintiffs lies not in losing the opportunity to appeal *per se*, but rather in losing the opportunity to appeal, and potentially influence the Project, *before* the final decision, "and that harm is perpetuated by the Project's approval." 632 F.3d at 1137-38. The court of appeals explained, "The administrative appeals process would have allowed [Plaintiffs] to challenge the Project under both NFMA and NEPA, and to seek changes in the Project before final approval by the Forest Service. Such administrative appeals sometimes result in significant changes to proposed projects." Id. at 1138. The hardship the panel describes cannot be cured by conducting an administrative appeal concurrent with logging operations; the Plaintiffs were denied their chance to influence the decision before implementation, and the Forest Service's completion of a *post hoc* administrative

appeal does not change that.

The Forest Service has not shown a change in the facts or controlling law that would warrant dissolution of the preliminary injunction.

Accordingly, IT IS HEREBY ORDERED that the Forest Service's motion to dissolve (Doc. No. 64) is DENIED

Dated this 3rd day of August, 2011.

/s/ Donald W. Molloy
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT